Okay, Mr. Hafen, whenever you're ready. Good morning, Your Honor. Jonathan Hafen, on behalf of the distributor plaintiffs and Wakaya at council table with me is Cynthia Love. May it please the court, we are here today based on two fundamental legal errors that were made by the trial court below. The first one is that the trial court determined that it should be up to an arbitrator to determine whether or not Wakaya, a non-party to the plaintiff's distributor agreement, should be subject to an arbitration provision. In other words, the question of who should decide that was deferred to an arbitrator. And there is no question under a controlling Supreme Court precedent, and certainly in California as well, that that decision must be made by a court. It cannot be made by an arbitrator. I'm so confused. When I read the district court's opinion, I thought that he said it was up to the arbitrator. But then another point he said, it is, it is arbitrable. These are arbitrable. And in fact, it is so clearly arbitrable that I'm not even going to retain jurisdiction. And the parties didn't object to that. So I don't know how we make sense out of this district court opinion, because it would have made no sense for him to dismiss jurisdiction except if he believed he had ruled that it was arbitrable. And at points he said it was. You can also find statements that he said it's up to the arbitrator. But both of you, both sides seem to agree that he's deferred arbitration to the arbitrator. And I think that just is not at all obvious from the district court opinion. Well, I'll tell you where I get it, Your Honor, is on page nine. If you look at page nine of the court's order, you see in big, bold print, it is up to the arbitrator to decide arbitrability. And that is also surprising to us, because on page two of the court's order, the court says, I'm declining jurisdiction. Well, but in another point, the court said it is arbitrable. So where do you go? What do you do? Exactly. The court said that you have some determinations that suggest that there would be support for arbitrability. But the problem is that the analysis was never performed by the trial court. No, but if either of you felt that there was doubt about whether the court had determined arbitrability, you would have objected to the court's dismissing jurisdiction, dismissing the case out of the court. Because if it was really up to the arbitrator to decide arbitration, you would certainly, for statutory limitations reasons, want the court to keep the case open because the arbitrator always could decide it wasn't arbitrable. Which was something else that the court did here and said, well, maybe it should be stayed. We just we just don't know. But nobody asked for that. And it seems to me that that is a pretty strong declaration that the parties believed, contrary to what you're both arguing now, that the district court decided this was arbitrable. That's not how we read, respectfully, that's not how we read the decision. And I will admit that it is. Well, we were a little bit mystified when we saw it as well. But when you see a heading that says the arbitrator is going to decide this, and then you have a court that says things that kind of seem to go both ways, but what you don't have is the analysis that is required. And let me point out, WCAIA is a non-signatory. As to the distributor plaintiffs, everybody agrees that's been conceded by our side. Okay, subject to arbitration, motion to dismiss, we chose not to appeal that. But we had to appeal this because it applies to non-signatory. And you know, if you look at the Jacks case, if you look at a number of the cases that we cited in California, you have to go through a very specific analysis for policy reasons before you're going to make a decision that a non-signatory to a contract is going to be bound to a provision in the contract. And there is significant harm that WCAIA could suffer if this is allowed to stand. Let me just change. I mean, it goes to the same question, but it's a different way to look at it. In California, the California court held with these same parties before it that Young-Devity has waived any rights to arbitration by not asserting arbitration. So why isn't that race due to Cotta that binds the parties now, because it's the same parties he had jurisdiction over them. He said you've waived that by not asserting arbitration. Great question. So here's the response to that. If what the trial court did here was truly hold that WCAIA is subject to an arbitration provision that's contained in all of these distributor agreements, that doesn't just impact what's happening in California. That impacts WCAIA forevermore. And one thing is for certain, these parties have litigated in numerous forms. We know about two. The court could take judicial notice about a number of others. There will likely be additional litigation in the future. No court has applied the appropriate analysis to make a decision about whether WCAIA is subject to arbitration under these distributor agreements when it's not a party. But the court has made the decision that Young-Devity has waived its right to arbitration as to WCAIA. As to that set of claims, that's correct. But here we have a court... It's basically the same set of claims. It involves the same set of claims. But it certainly involves the same parties. They both were parties in the California case. Yeah. Here's the tough thing, Your Honor. The case in Utah was filed first. Nobody disputes that, although the trial court, we don't think, applied that factor correctly under Colorado River. And then you had the California case get filed a week later. And then there were motions to dismiss in both cases. And then they sat for a year. I guess we'll get to this when we get to Colorado River. But the court reached out on this issue. Nobody briefed who should determine arbitrability in Utah. There wasn't a motion to compel arbitration in California because the district court in Utah can't compel arbitration to take place in California. So you have a situation here where the court reached out where it didn't need to. It could have said duplicative litigation, which didn't exist at the time all the motions were filed. But in California, WCAIA agreed to proceed to the merits before a court. And therefore, as opposed to... I mean, longevity agreed to that. So that between longevity and WCAIA, don't we have a clear waiver? I know that's not an issue before us, but the procedures of this whole case is just befuddling to me. And I can understand why. And the answer is, there is an argument about waiver. That is now on appeal before the Ninth Circuit. Longevity is contesting that and will be arguing that on December 3rd in Pasadena. So there's really not been a final decision because of dependency in the Ninth Circuit appeal on waiver. Correct. And so now what WCAIA has to contest at this point is any kind of a decision that could have any type of collateral impact that somehow WCAIA is bound up in the distributor agreement. Because if you go through the appropriate analysis and you're looking at whether or not a non-signatory is going to be bound, you have to look at things like, is it an alter ego? You look at agency. Are there spouses? Is there a pre-existing relationship? And we don't want anything out there suggesting somehow that there has been a determination made by a court based on an appropriate factual analysis that would support those kinds of arguments either in this litigation in California or future litigation between the parties. I'd like to move now to the second point, if it's okay. And the second point is the Colorado River Doctrine. And the court just got this wrong as well. And again, this was not anything that the parties had briefed. This was a year and four months after the court, as it indicates in the order, decided, sua sponte, I'm going to reach out and talk about duplicative litigation. And no party asked the court to do that. And the court did not have the benefit of briefing. The court did not have the benefit of oral argument. You aren't disputing, it doesn't seem to me, any of the factors that the court, or the facts the court set out as far as the duplicative litigation. There's not much question. As far as whether there is duplicative litigation, yeah, here's the problem. But you're not disputing. The court set out about three pages. There's no question this is duplicative litigation. And that litigation is far beyond where this litigation was. I would certainly concede that the litigation in California is more advanced. But once again, the court used the wrong analysis. I understand your argument about Colorado River. I guess my problem is there is no, from what I can tell, there is no particular standard the court follows when it dismisses for duplicative litigation. And why can't it follow some of the Colorado River factors? Why does that, why is that a problem? It may have done that with a misunderstanding. Maybe it thought it should be applying the Colorado River factors. But it very clearly understood that it was dismissing for concurrent litigation, concurrent jurisdiction. It said so several times. Yeah, that's correct. So what's the problem with the factors? Why does the label matter? Let me give an example. One of the areas where the court got it wrong under Colorado River, which also would impact this other determination, is the first to file issue, where the court said, well, we're not going to count the state court filing. Our clients filed in state court first, then it was removed. The court said, well, I'm going to pretend like the California court was filed first, that proceeding was filed first before Utah. That's not the law. Well, but doesn't that make it an abuse of discretion? We're looking at an abuse of discretion on this issue. Well, our clients are entitled to the appropriate legal analysis. And let me try to answer that more directly. The first to file analysis is what we had been waiting to file with the court. We couldn't file that with the court because the court had not yet determined whether it had jurisdiction over the parties. We still don't know that. We had intended to present something to the court once the jurisdictional issue had been resolved, hopefully in our client's favor, saying under the first to file doctrine, this is the Minespring case in Utah, under the first to file doctrine, our plaintiffs are entitled to their choice of forum. And we continue to believe that they're entitled to that choice of forum. And what you need to look at then, the trial court on remand would have to say, all right, which case was filed first? And then do any of the exceptions apply? And similar to a Rule 42 analysis, if you're talking about whether or not this should be transferred or consolidated, there's a big long list of factors under any type of analysis there. And it simply wasn't done by the trial court. Instead, it reached out and briefed this issue without any of us having an opportunity to brief it at all. And was the court mistaken in applying the Colorado River factors? Absolutely. Has the court yet conducted an appropriate analysis as to duplicative litigation when you're looking at the first to file rule? And all of the factual findings at this stage on a motion to dismiss when all of the facts that we allege and the circumstances and the inferences from those facts go in my client's favor? That absolutely has not happened yet. Now, may the court get there? Sure, the court may get there, but we need the court to apply the correct analysis. What is the correct analysis? What should it have considered? The trial court should have first of all looked at the first to file analysis. Well, let's say besides that, what other circumstances? Well, first of all, you look at first to file, and then you look at whether any of the exceptions apply. There's no case law suggesting the first to file is controlling, that that somehow predominates over everything else. I agree that it doesn't predominate over everything else, but I think that what we're entitled to is an analysis that lays out factors that aren't, for example, premised on litigation between, that is, in state court based on principles of federalism and abstention and a federal court proceeding, and instead throws those factors out, points to what's happening in California, says it's duplicative. We just don't think that that's sufficient. We want the opportunity to make the argument to the court. Even now, the discovery's been done in California. Summary judgment is being briefed and has been briefed. There will be rulings. At the end of that process, there is a breaking point where we intend to ask the court to honor our plaintiff's choice of form and have that case, with all of that discovery in place, tried in Utah. Other than choice of form, what other point would you argue at this point? Well, a lot of the other things that weren't looked at yet would be, for example, the convenience of the litigation. There are a number of other factors that weren't discussed there either by the court. Mr. Haven, let me ask you, on the Colorado River issue, is that confined to Waukega, or would it also support reversal for the distributors? As I understand it, it's only for Waukega. No, that would be everybody. The arbitrator issue is just Waukega. We've conceded with respect to the distributor plaintiffs. But as to the jurisdictional issue, that's everybody. Our position is, look, we filed first. There was a motion to dismiss. We filed our response timely. We want the case to go forward in Utah. And then we waited a year, and nothing happened in Utah. And at that point, we had to make a decision because our clients are getting crushed by what is happening here. And so we filed counterclaims after a year in California and chose to proceed while all the while hoping that we would get a favorable decision from Judge Neufer, and then go back and say, Your Honor, we would like to, at the appropriate point in time, have this case tried in Utah. And we still don't have an analysis on that plea. I'd like to reserve my final minute if I can. Thank you. You're from the Appellee. Jonathan Emord on behalf of the Appellee Longevity International, Inc. I think I'd like to take the initial point about first to file. There are two very important factors here. First of all, they never raised the first to file argument below. Well, how could they? Nobody had raised the issue with regard to... Your Honor, they could have actually, because they had the opportunity to raise it in the California action. And they did not below. Okay, yes, you're right, you're right. Sorry. But they didn't raise it in the California action. And not only that, they... Why is that relevant? Well, because here's why. They haven't forfeited an argument on appeal in this case by failing to raise an argument 1,500 miles away. Because you have to look at both, in a concurrent jurisdiction analysis, you have to look at the dockets of both of these proceedings. If the right test is applied. Yes, that's correct. And that's the question. And that's the question. But when we look at the concurrent jurisdiction analysis and we look at the California action, they not only did not raise the first to file issue with the court, and so the court's going forward, but they also filed their counterclaims, raising the very same issues that they had in the Utah action. So they waived it, they waived it. How on the merits, assuming that it wasn't waived in this case by doing something in another jurisdiction, in another circuit, assuming for purposes of my question that it wasn't waived, how is it relevant in this case if the district court applied the wrong test? Well, the point is, when we look at the first file analysis, we're looking at it now. And we're asking ourselves presently, under the first file analysis, it's not an inflexible rule, it's also a rule that is eliminated in the context where the second action is substantially mature, which is what happened here. They let the second action go to a substantial state of maturity, all the way to the point of motion for summary judgment, they went through and they litigated all their claims all the way up to that point, and now they're saying, for the first time anywhere, that the first to file rule ought to be considered. They can't do that. Well, what they're saying is that Judge Newfor applied the wrong test. And in your reply brief on page 12, you say that Judge Newfor applied the wrong test, because you specifically, I'm sorry, in your reply on the sanctions brief on page 12, you say, quote, those factors are relevant only when determining whether to dismiss a federal suit in favor of a concurrent state suit. So your argument when you're asking for sanctions is Judge Newfor applied the wrong test. Mr. Hafen's argument is Judge Newfor applied the wrong test. How do we avoid saying Judge Newfor applied the wrong test? I disagree with your interpretation of what we wrote. What I'm saying is Judge Newfor could ask about factors. There's no set specific rule governing how he's going to exercise that beyond the Colorado River analogy for federal-federal litigation, principle for federal-federal, which all of the circuits have adopted. And that is, ultimately, he has to ask this question, right, he has to ask the question whether or not there are two cases pending in federal court, and then with regard to the second case, is it substantially more mature? And he did that, and he evaluated it and said, yeah, they're substantially more mature. So in other words, even if he made an error, it would be harmless, because in the end – Well, let me ask you about that. How in the world, if it's a discretionary test, and the judge applied the wrong test, can we say that it is harmless error, because if the judge exercised his discretion under the right test, he would have exercised his discretion in the same way that he did when applying the wrong test? The assumption that it's a wrong test, I think, is erroneous. In other words, he has, within his discretion, under the abuse standard, he has it within his discretion to choose how to assess this situation, that he looked at some of these factors, it's his discretion. It's not an error of law. Well, why isn't it? Colorado River prescribes a certain – certain factors. It's a certain test. And you cite cases that, like Rice, that say, well, in Colorado River, they were – they started by saying, well, there's really no specific test for this situation. There are – there's a body of cases that deal with concurrent jurisdiction and two federal cases. But there's not a test. This is the first time that we're going to investigate a test when there is a pending state proceeding, and the question is whether or not the federal court should exercise its unflagging obligation to exercise federal jurisdiction. And so Colorado River is a – is a very specific test with very specific factors that Judge Newford just messed up on. He thought it applied, and it just doesn't, and there's no cases that say that it does in two federal jurisdictions. Let's take a look at both the, you know, the contrasting standards in Colorado River. We have the standard for federal and state litigation where the factors are enunciated in the decision. Then we have the second one, which is this case, federal-federal litigation. With regard to federal-federal litigation, Colorado River says specifically, as between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. No precise rule has evolved. Now that means there's discretion there. This isn't a hard and fast rule. This is a jurisprudential rule, and this judge felt as though he ought to consider some of these factors. He did, but in the end, he ruled precisely as the circuits have indicated he should, which is there's duplicative litigation. We can't have these two cases going on simultaneously, and so he dismissed the case on the very sound reason under the abuse of discretion standard. He has a choice, right? Rational choice, as long as it's rational. He said, look, that other case is already up to the point of decision. We've got all the motions for summary judgment briefed. We've got all the same claims in that action as here. There is no right of a party to litigate the same claims against the same parties in two different federal courts, and that's what substantively they're asking this court to achieve by overturning this judge's decision. The decision is meritorious, is consistent with the law, precisely because he articulated a decision that is in complete alignment with this second federal-federal standard in Colorado River and all the circuits' decisions as well. Any other questions? Well, you keep talking about the standard. I couldn't really find that there is a particular standard such as the Colorado River factors for federal-federal duplicative litigation. I mean, they do talk about, the court talked about consideration of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition litigation, but I don't think there is any particular test, as you stated. So, but we know that the judge here applied a particular test. Well, there may have been some crossover here, but how do we really know if it thought that it wasn't constrained by that test and it wrongly applied, do we know what the result would be? Well, I think it's very clear that if we were to, if this court were to reverse his determination and were to allow the case below to proceed, we will very much have a situation where there will be two courts proceeding on the same causes of action, and that without question would violate the federal-federal standard in Colorado River. It would be an unprecedented move in the circuits. Well, you'd have an opportunity, if we reverse, because it's an abuse of discretion, because there's no, you know, applied the wrong legal standard, whatever, wouldn't you have an opportunity to go right back and say, now, Judge, please, please make it clear that you're dismissing this not based on the Colorado River factors, but based on the general idea of duplicative litigation? And would you not expect the court to do the same thing? Well, I guess the question all boils down, in the end, to the abuse of discretion standard, and whether or not, when you look at the abuse of discretion standard in light of the federal-federal context in Colorado River, where that language is, though no precise rule has evolved, and the point that I agree with you, even though I use the word standard, no precise evaluative construct exists. Was this judge abusing his discretion? I think very clearly it's the case that this judge was not, because he did not exceed the bounds of rationally available choice, given the facts and circumstances. In the end, he got it right with regard to the disposition of the case. This is, again, going back to an area of inherent control that you prefer to vest in the district courts over their docket, docket management. In the end, this is a procedural question. And so, with regard to whether or not the issue is right, you have a correct outcome. You have one that is consonant with the Supreme Court's decision, and you have one that, in no respect, violates that standard, which doesn't invite, under Colorado River, the judge to recognize that there is no precise rule that has evolved. Now, in the California case, did you argue, in support of a motion to dismiss Wakaiya's counterclaims, that those should have been dismissed in California, that the appropriate starting point is the first-to-file rule? Yeah, we tried to get one court out of this. We wanted one court. And so you argued, in the California case, that for the California court to decide whether or not to exercise jurisdiction over the Wakaiya's counterclaims, that it should decline to do that, because the starting point should be the first-to-file rule. Is that a factual statement? That's correct. With regard to their counterclaims, you see, there's another factual point that's important. So, in the counterclaim, I understand the red brief to say, is exactly the same claims that are being prosecuted in the complaint, in this case, in the Utah case, correct? Yes. And the first-to-file rule, is that anywhere within the set of factors that are prescribed in Colorado River? No. It's another jurisprudential consideration, however. All right. So, to recap, you argued, in California, that the starting point should be this factor that you've just conceded was omitted in the factors that Judge Newford considered in this case, right? Well, here's the point on that. We did raise it there because we didn't want to have to argue their counterclaims in that action and in Utah. We wanted one for them. Well, were you lying about what the law is? Were we what? Were you lying? Oh, no. You told the California Federal District Court that the starting point is the first-to-file rule. I understand you've got lots of really good reasons to confine the litigation to one forum, but you've made a representation that that's what the law is, and you're telling us you don't have to consider first-to-file. Well, at the start of the case, yes, when they first filed their counterclaims, we made that first-to-file argument. The court never reached it. So it continued on with the litigation. They never raised it. They never moved in either jurisdiction for it. And so the court continued on, and they continued to prosecute their counterclaims all the way up to the point-of-summary judgment briefing. So we're left at a time when the Utah court reaches the motions to dismiss. The Utah court is looking at it at that time, and at that time, it's looking at a court that has substantially progressed to the point-of-summary judgment, whereas it had not. And again, the first-to-file rule is not inflexible. The court may have its reasons for not addressing it in California. We don't know. But the point was that when the district court below decided the issue, it was clear. California was it, because California had brought it all the way to the point-of-summary judgment. And so in the end, this is entirely consonant with what the Colorado River Doctrine provides for the federal-federal context. The opposing party here has tried to conflate the federal-state analysis with the contrasting federal-federal analysis and suggest that all the factors of the state-federal analysis would have to be applied in the federal-federal context. That's wrong. But in addition, Judge Nuffer did nothing by using a couple of the factors in his analysis to take away from the holding in the case, which was completely correct, where he found that the California court had substantially progressed and that it would be improper, imprudent in his own docket management decision to continue with a case that would be duplicative in two jurisdictions. Therefore, he fulfilled the purpose of Colorado River. Any who rightly dismiss the case? I have 12 seconds, 11 seconds. No questions? Thank you very much. Thank you, Your Honors. Just a few quick points in my last minute. First of all, if you apply the wrong legal standard, it is abuse of discretion. It is clear. Alcantara and the Farmer case both say that. And so that means there needs to be a remand because there is no way to know what would have happened if Judge Nuffer had applied the correct analysis. We don't know, and we want the right to brief it. But I will say, these two cases will not be going side by side. It will either be in California or in Utah, and Judge Nuffer needs to be the one that decides where it will go forward. And he will have discretion to make that decision, but he has to apply the right test. What was the single biggest error that Nuffer made in his test? What would have been the determinative factor that would have changed his result, in your opinion? He got the first to file rule backwards. That's the biggest one by far. But there's a case law that says that is not necessarily determinative. That is not necessarily determinative, but that's where you start, and he did not start in the right place. I also want to just be very clear, regardless of what happens on the duplicative litigation factor, the arbitration issue has to go. We can't have something out there saying that Wakai is somehow subject to this agreement. And last, please don't sanction us. Thank you. Thank you, counsel. This was well argued. This matter will be submitted.